**JZ SMOKE SHOP, INC., Plaintiff,**

v.

**AMERICAN COMMERCIAL CAPITAL CORPORATION, Defendant.**

No. 88 Civ. 0465 (TPG).

United States District Court, S.D. New York.

March 21, 1989.

Patrick F. Broderick, Broderick, Broderick & Redmond, Bayside, N.Y., for plaintiff.

Edward A. Friedman, Friedman & Kaplan, New York City, for defendant.

## OPINION

GRIESA, District Judge.

Plaintiff JZ Smoke Shop, a tobacco shop in Nassau County, is a small business owned primarily by Joseph Zimmer. In March 1986, JZ borrowed $200,000 from defendant American Commercial Capital Corporation in a complex loan transaction. American is licensed by the Small Business Administration (SBA) as a Small Business Investment Company (SBIC). As an SBIC, American makes loans to qualifying small businesses pursuant to regulations promulgated by the SBA.

Zimmer sold his interest in JZ in May 1987, along with the real property on which the shop stood. Shortly thereafter, JZ paid American the outstanding balance on the loan, together with all interest and a prepayment penalty. However, JZ did not redeem a warrant which American had taken as part of the original loan package.

JZ has brought this suit to recover double the interest and fees paid to American, alleging that American made excessive financial charges in violation of the SBA regulations and New York usury law. JZ also seeks to obtain satisfaction of the mortgage held by American.

American has answered denying liability on these claims. Also, American has counterclaimed to compel JZ to redeem the warrant in accord with the loan agreement.

JZ now moves for summary judgment on its claims and the counterclaim. American has responded by cross-moving for summary judgment.

For reasons set forth hereafter, the court rules that JZ's claim of excessive finance charges is invalid, and American is entitled to summary judgment dismissing this claim. JZ is not entitled to satisfaction of the mortgage at this time, so that summary judgment is denied on this issue. With regard to American's counterclaim for the redemption of the warrant, there are certain factual issues requiring determination, and summary judgment is denied.

## FACTS

In 1985, a mortgage broker named Lee Warzur approached American about making a loan to JZ. Both JZ and Zimmer owed money to several creditors. A tax lien had been imposed on the real property on which JZ was located.

The title to the real property in question was held not by JZ but by a separate entity, Weinlitz Realty, a corporation jointly owned by Zimmer and his wife. JZ Smoke Shop was the sole occupant of the property. JZ paid no rent.

Gerald Grossman, the president of American, entered into negotiations with Zimmer concerning a potential loan to JZ with the real property serving as security. Zimmer

told Grossman that JZ did not own the property, but that it was owned by another Zimmer entity.

On December 10, 1985 Grossman wrote a letter on behalf of American outlining the terms on which American was willing to make a $175,000 loan to JZ. Zimmer signed a copy of this letter and returned it along with $2,000, as requested by American, to cover the cost of appraising the real property. The letter stated, "This is not intended as a commitment, but is a proposal for us to proceed to evaluate the business legal and collateral valuations necessary to determine how and if we may conclude a transaction." On January 8, 1986, an appraiser hired by American valued the real property at no more than $400,000.

On March 4, 1986 a loan agreement was executed between American and JZ. The agreement provided for a loan of $200,000 to be repaid over five years at an interest rate of 16.375% per annum. It also provided for a pre-payment penalty equal to three months' interest. In his capacity as JZ's president and on behalf of JZ, Zimmer signed the agreement as well as a promissory note. In his individual capacity, Zimmer also signed a mortgage on the real property and a personal guarantee.

In connection with the loan agreement JZ gave American a warrant, under which American had the right to purchase 40% of the equity of JZ for $125 per share, or a total of $5,000. American had the power to exercise this right at any time prior to three years after the termination of the loan. JZ had the option to call (buy back) the warrant for $40,000 at the time of termination. If American chose not to exercise the warrant, American had the right to "put" the warrant to JZ—*i.e.*, to require JZ to redeem the warrant at a formula price. The redemption price of the put was to be equal to

> the greater of the incremental increase in the net worth of the Borrower between the Closing Date and the date of the "put" or the incremental increase in the fair market value of the Zimmer mortgage property between the closing date and the date of the "put."

Simultaneous with the exercise of the loan agreement, by letter dated March 4, 1986, Zimmer requested and authorized American to pay out the proceeds of the loan to various persons and entities. Pursuant to these instructions, American disbursed over $90,000 to pay off mortgages and taxes associated with the real property. The sum of $78,849 was disbursed directly to JZ as "working capital." Approximately $20,000 was disbursed to the mortgage broker, the lawyers, and the title company to cover fees associated with the loan transaction.

In May 1987 Zimmer sold his interest in JZ along with the real property on which JZ was located for $1,000,000. Zimmer represented to American at the time that $766,000 was for the real estate, and $234,000 for the business. Shortly thereafter JZ pre-paid the outstanding balance on the loan, including the penalty of three months interest.

JZ did not exercise its option to call the warrant. American then attempted to put the warrant to JZ. JZ did not redeem the put option. This lawsuit followed.

### The Summary Judgment Motions

JZ contends that there is no triable issue on its claim under the SBA regulations, and that therefore the applicable statute permits it to recover double the charges it paid. JZ also contends that there is no triable issue on the claim that it has repaid the loan with interest and is entitled to satisfaction of the mortgage.

American, in its cross-motion for summary judgment, alleges that the finance charges were clearly within the permissible range so that summary judgment should be granted dismissing JZ's claim. American disputes that JZ is entitled to a satisfaction of the mortgage because the mortgage secures *all* of Zimmer's obligations, which included redemption of the warrant. American also contends that it is entitled to summary judgment on its claim that JZ is required to redeem the warrant. American calculates the redemption price under the contract formula as equal to the increase in the fair market value of the real property.

Since the land was sold for $766,000 in May 1987, and had been appraised at $400,000 in January 1986, American claims the redemption price is equal to the increase of $366,000.

## DISCUSSION

### The Excessive Finance Charge Claim

■ The operation and regulation of SBIC's are governed by the Small Business Investment Act, 15 U.S.C. § 687, and regulations thereunder. Section 687(i) provides for the issuance of regulations fixing the maximum rate of interest to be charged for an SBA loan.

Pursuant to this authority, the SBA has promulgated regulations in 13 C.F.R. § 107 which include limitations on the amount of interest that any SBA licensee may charge a small business borrower. In order to prevent a licensee from evading those limitations by charging additional interest disguised in the form of various fees, the limitations apply to the total "cost of money."

Generally, cost of money includes the total consideration given to a Licensee ... [by] the Small Concern, such as interest, discounts, points, fees, commissions, closing costs and any other thing of value given for financing in the form of Loans and Debt Securities and shall be prorated over the stated term of the financing. Cost of Money does not include ... prepayment penalties pursuant to § 107.301.

Provided, however, That if a Licensee has imposed a front end charge, such charge shall be prorated over the stated term of the financing. In that case, the sum of interest, unearned charges, and prepayment penalties shall not exceed the cost of money limit in effect at the time of the financing; and in the event of prepayment any excess shall be returned to the Small Concern.

13 C.F.R. § 107.3 (1988).

There are slightly different cost of money ceilings for "loans" as distinct from "debt securities." A "loan" is defined as a "debt with no provision for the Licensee to acquire Equity Securities." 13 C.F.R. § 107.3. "Debt Securities" are defined as "securities evidencing a loan with options or any right to acquire equity securities in a small concern." 13 C.F.R. § 107.3.

The ceiling for debt securities is provided in 13 C.F.R. § 107.302, as follows:

Subject to lower ceilings prescribed by local law, Cost of Money on ... Debt Securities shall not exceed the following:

(b) Debt Securities. (1) If the current Debenture Rate is 8 percent per annum or lower, Cost of Money shall not exceed 14 percent.

(2) If the current Debenture Rate is in excess of 8 percent per annum, Cost of Money shall not exceed the sum of the current Debenture Rate plus 6 percentage points, but rounded off to the next lowest eighth of one percent.

The "debenture rate" is defined as the interest rate, as published from time to time in the Federal Register by the SBA, for certain types of ten year debentures.

In the present case, there is a dispute as to the date to be used in fixing the debenture rate. The debenture rate is measured as of "the time of first disbursement, or when a legally binding written commitment was issued, ... whichever shall first occur." 13 C.F.R. § 107.302(c).

American contends that there was a binding commitment on December 10, 1985 and that the debenture rate of that date (10.375%) should be used. JZ argues that there was no binding commitment on that date and that the debenture rate for March 4, 1986 (8.795%) should be used. The court agrees with JZ. No binding commitment was made on December 10, 1985. The commitment, and apparently the first disbursement, occurred on March 4, 1986. Thus, the applicable debenture rate is 8.795%.

Since the debenture rate is in excess of 8%, the ceiling on the cost of money is the debenture rate plus 6%, rounded off to the nearest ⅛%. This is 8.795% plus 6%, or 14.795%, which, when rounded off to the nearest ⅛%, is 14.75%.

The remedy for exceeding the ceiling for cost of money is provided in 15 U.S.C. § 687(i)(4).

> If the maximum rate of interest ... on any loan made by a small business investment company exceeds the rate which would be authorized by applicable State law if such State law were not preempted for purposes of this subsection, the charging of interest at any rate in excess of the rate authorized ... shall be deemed a forfeiture
>
> ....
>
> [T]he person who paid the interest may recover from a small business investment company making such loan an amount equal to twice the amount of the interest paid on such loan.

There appears to be no doubt that "rate of interest" in the statute covers "cost of money" in the regulations, and "loan" in the statute covers a "debt security" in the regulations.

In order to recover on its claim, JZ must show that the cost of money imposed by American exceeded the maximum permissible rate under applicable state law as well as the maximum permissible rate under the SBA regulations.

JZ contends that the applicable state law rate is 16%, under New York's usury statute, N.Y. General Obligations Law § 5–521. This statute is applicable to individual borrowers. While the loan was nominally made to a corporation, JZ claims the principal debtor in the agreement was Zimmer, an individual. This is because Zimmer owned the real property, which was the true object of and security for the loan. American responds that the loan was made to a corporate borrower, for corporate purposes, so that the applicable rate is 25% under N.Y.Penal Law § 190.40.

Under New York law, interest rates of up to 25% may be imposed on corporate borrowers. The 25% rate is applicable even where there is an individual guarantor, so long as the money is used for the advancement of commercial business purposes. *LaLone v. Gerber*, 107 A.D.2d 584, 483 N.Y.S.2d 314, 315 (1st Dept.1985). The 25% rate is permissible even if the corpora-

tion is a mere conduit for the money on its way to an individual's personal account. *FDIC v. Julius Richman, Inc.*, 666 F.2d 780 (2d Cir.1981).

Only where a loan to a corporation is in practice made to an individual for his personal needs, as opposed to business needs, is the 16% usury statute applicable. The Court of Appeals has clearly stated,

> [W]here the loan was in fact, although not in form, made to an individual guarantor to discharge his personal obligations, and not in furtherance of a corporate or personal enterprise, the individual guarantor may impose the defense of usury. On the other hand, where an individual borrows money through a shell corporation to further his own business or commercial enterprise, the defense of usury is not available.

*Schneider v. Phelps*, 41 N.Y.2d 238, 242, 391 N.Y.S.2d 568, 571, 359 N.E.2d 1361, 1364 (1977) (citations omitted). *Thelma Sanders & Assoc. v. Friedman*, 137 A.D.2d 677, 524 N.Y.S.2d 768, 769 (1988).

Here, while it was Zimmer, and not JZ, who owned the property, the loan was clearly in furtherance of Zimmer's commercial enterprises. The property was occupied by the business JZ. Furthermore, at least $78,000 of the loan proceeds did in fact go to JZ for "working capital." In Zimmer's own affidavit he admits his purpose in seeking the loan was not personal but "to borrow some money for my business." Therefore, the applicable state law rate was 25%.

The stated interest rate on the loan was 16.375%. Even without including the other components of cost of money, this exceeded the maximum permissible rate under the SBA regulations by 1.625%. However, in order to recover on the excessive interest claim, JZ must show the total cost of money exceeded 25%.

JZ calculates the cost of money rate, inclusive of all the various fees and penalties, at 215% over a 15 month period. In arriving at this figure, JZ contends the cost of money should include the base interest rate, the prepayment penalty of $7,138, the

$10,000 fee for the mortgage broker, the $4,827 fee for American's attorneys, $3,048 in title charges, the $2,000 investigation fee, and the $366,000 that American now demands for redemption of the warrant.

American disagrees with JZ's calculation because it contends that the value of equity options is not included in determining the cost of money under the regulations.

Cost of money, as defined *supra,* includes "the total consideration given to a Licensee." While cost of money does not include the future appreciation of equity securities, it must include the value of those securities as of the date they are given to the lender in return for the loan. That value is part of the "consideration" given to the lender in return for the loan.

At the time JZ gave American the warrant, the market value of the warrant could not have been greater than $40,000. This is manifest from JZ's option to buy back the warrant at that price; no one would have paid more than $40,000 for a security that could be taken back from him for $40,000.

Assuming *arguendo* that all the fees other than the warrant which JZ added to its calculation of cost of money were properly included, the total of these expenses only amounts to $27,013.48. Adding to these $40,000 for the warrant, and prorating the total term of the financing, the rate would be 6.7% per year.[1] When added to the basic interest rate of 16.375%, the total "cost of money" rate would be 23.075%.

Therefore, the cost of money imposed by American did not exceed the maximum rate of 25% specified by New York State law. Pursuant to the terms of 15 U.S.C. § 687(i)(4), JZ has not made out a claim to recover the interest paid to American.

JZ's motion for summary judgment on the excessive interest claim is denied. American's cross-motion for summary judgment dismissing that claim is granted.

1. Total expenses of $67,013.40 over 5 years is 13,402.68 per year. 13,402.68 is 6.7% of 200,-000.

## The Validity of the Warrant Under SBA Regulations

■ JZ next claims that the warrant itself was improper and violated other SBA regulations. Specifically, JZ claims that American was not entitled to base the redemption price formula on the appreciation of property which belonged to an entity other than the JZ corporation. JZ further argues that the terms of redemption were not legal and reasonable, as evidenced by the fact that the warrant would give American an *extra* $366,000 profit on a $200,000 high-interest loan.

American claims that the redemption formula was proper because the real property to which it referred was in practice an asset of the corporation. American points out that the redemption price was reasonable, since it was a highly risky loan, and JZ's call option enabled JZ to limit American's proceeds from the redemption to $40,-000. Alternatively, it claims that if the part of the formula which relates to the property was improper, the rest of the formula was proper and should be given effect.

The SBA regulation regarding redemption of a warrant provides:

Subject to the following restrictions, a Licensee may acquire Equity Securities, options or warrants on terms that may include redemption by the issuer (Put).... (b) The redemption price shall not exceed a price to be agreed upon not later than the date of the Licensee's first disbursement and such price shall not be pre-determined but must be determined by a formula which is legal and reasonable and based on book value or earnings of the Small Concern.

13 C.F.R. § 107.321 (1988).

While the warrant's redemption price provision was agreed upon as of the first disbursement, it was not in accordance with this regulation. The real property may have been used for the corporation's benefit, but it clearly was not a part of "book value or earnings" of JZ. As described

above, American was entitled to charge a higher interest rate precisely because it made its loan to JZ as a corporation. American must also abide by the limitations which the regulations impose with respect to that corporation's "book value."

The warrant is not, however, made entirely void by the improper provision. As described above, the contract set the redemption price at the greater of two alternative values. Only one of those alternatives is improperly based on the real property value. The other alternative, based on the book value of JZ, was proper.

Where only one of two alternatives in a disjunctive provision is defective, the provision as a whole is not rendered invalid. *Libra Bank Ltd. v. Banco National de Costa Rica*, 570 F.Supp. 870, 891 (S.D.N.Y. 1983). The alternative method of calculation based on the increase in book value of JZ may be used.

However, there is insufficient information in the record to apply this formula. Thus, summary judgment cannot be granted on the warrant claim.

*Satisfaction of the Mortgage*

■ JZ is not yet entitled to a satisfaction of the mortgage held by American. The mortgage on its face recites that it was given by Zimmer to American to secure his guarantee. In his guarantee, Zimmer agreed to "absolutely and unconditionally guarantee the due payment and performance by the borrower of all monies to be paid and all things to be performed pursuant to each and every condition and covenant contained in the Loan Agreement ... or in any document or instrument in pursuance thereof...." Until the obligation on the warrant is ended, American is not required to file a satisfaction of the mortgage. The matter of the mortgage satisfaction cannot be resolved on summary judgment.

## CONCLUSION

JZ's motion for summary judgment is denied. American's motion for summary judgment dismissing JZ's claim for excessive finance charges is granted. Ameri-

can's motion for summary judgment on its warrant claim is denied.

SO ORDERED.